Judge tlNDEKivoor,
delivered the opinion of the court.
In 1821, Owsley executed his obligation to C. Allen, in the penalty of $4,000, conditioned to convey certain lots to him, upon the payment of the last of the purchase money. It appears that Alien agreed to pay $>2,000 for the lots, that the last payment of $>700 being due and unpaid, Owsley instituted suit upon the note therefor, and obtained judgment. Allen replevied this judgment on the 12th of August, 1823, for two years with Benjamin C. Crow, and Reuben Ohler, his sureties. On the 23d of March, 1824, Allen mortgaged the lots to Crow and Ohler, for the purpose of indemnifying them against loss. It is stipulated in the mortgage, that if an execution isssue on the replevin bond, the lots may be levied on at the request of Crow and Ohler, and sold for the satisfaction thereof. Allen agrees, moreover, to execute to the purchaser any deed proper to confirm his title; and authorizes the sheriff to make the sale and conveyance contemplated, upon the request of Crow and Ohler. On the 18th of August, 1825, an execution issued upon the replevin bond. It was levied on the lots in conformity to the written request of Crow and Ohler, and they were exposed to sale on the 24th of September following, when Jacob Swope became the purchaser, being the highest bidder to whom the sheriff conveyed. Swope therefore, transferred his interest in the lots to Owsley, and he sold and conveyed th<?m to Hamilton, in September, 1824
Assignment, by vendee of a Rond for conveyaneo ofiand, after vendor has acquired vendee’s equitable interest in the land, will enable assignee to recover damages at taw against vendor for failure to convey; but the chancellor will relieve ,against the judgment at Jaw.
On the 29th of August, 1825, Allen assigned to Thurman the obligation which be held on Otvsley for the conveyance of the lots. On the 28th of September, 1825, two days after the lots were sold by the sheriff, Thurman, as assignee of Alien, instituted an action of covenant upon the obligation, avering the payment of the whole of the purchase money, and assigning a breach in the non-conveyance of the lots. Owsley plead to this action, and in his pleas relied on his acquisition of Alien’s title to the lots in the manner already detailed, asa bar to the action, and made profert of the mortgage, &c. by all which he alleged he had been exonerated from his obligation to onvey. Thurman craved oyer of the mortgage, &c. which Owsley failed to give; and therefore, a writ of enquiry was execuJed and damages assessed, as though no pleas had been filed. Judgment was rendered upon the verdict for $2,000. To be relieved against this judgment, Owsley filed his bill, and obtained an injunction, it is contended on the part of Owsley, that by the execution of the mortgage, the levy of the execution on the lots as directed by the ’mortgagees, the sale, the purchase of Swope and his transfer, that the obligation to convey on the part of Owsley ceased and determined. At least that equity will prevent its enforcement. Thurman denies the equity asserted, and insists that if Owsley had any remedy it was at law. Whether Owsley is entitled to any relief, and if he is, its extent, and what tribunal should afford it, constitute all the questions of importance.
The question of jurisdiction will be first considered. We can discover nothing in the facts detailed, which amounts to a cancelment or distraction of the obligation executed by Owsley, so as to preclude a recovery at law. Whenever the last of the purchase money was paid, the legal right of Allen or his assignee to have a conveyance of the lots or damages for their non-conveyance resulting from the terms of the contract, was complete. A bill in chancery might have been filed to coerce a specific execution, or an action at law, prosecuted for the damages. The right to persue one of these remedies must continue to exist until it is, either, released by the party in whose favor it exists, or until satisfaction is made by a specific per *129 form anee, or the acceptance of something valuable in lieu thereof. Conceding then the right of Thurman to sue at law for damages occasioned by Owsley’s failure to convey, he cannot be defeated unless the action has been released, or unless there has been an accord and satisfaction, or a performance of the covenant. It is clear that no release has been executed. It is equally manifest that there has been no performance of the covenant by conveying the lots. To our minds, it is likewise plain, that there was no accord and satisfaction. The damages which Allen or his assignee might be entitled to, constituted no part of the subject matter of the agreement between the parties, as set out in the mortgage. Besides, Owsley was not concerned at the time in the execution of the mor tgage, or in any of its stipulations.
An accord, to be the foundation of a valid satisfaction must be made bet-veen the obligor, who owes thedebt, and the person to whom it is due.
An accord to lay the foundation of a valid satisfaction should be between the obligor who owes the debt or duty, and the person to whom it is due. The legal right to the obligation remained with Allen, notwithstanding the mortgage. The mortgage purports to operate upon the lots, and cannot work an assignment of the obligation, so as to destroy Allen’s legal right. That right was passed by the assignment to Thurman.
"VVe are of opinion then, that the facts relied on in the bill, and which are substantially the same set out in the pleas filed, and which were, not noticed after Owsley’s failure to give oyer, constituted no defence at law. It remains to be considered, whether they constitute any cause for relief against tlie judgment, in a court of equity, and if they do, th«n to what extent. Thurman cannot occupy a more favorable attitude than Allen, unless Owsley has been guilty of, or is about to practice some fraud. If, for instance, Owsley has induced Thurman to take an assignment of the obligation for the lots, and Thurman has bought the obligation relying on Owsley’s promises; then Owsley might with propriety be deprived of an equity which otherwise lie might successfully assert against Allen.
At present, we shall view Owsley’s equity as it relates to Allen, and then notice the ground taken, for placing Thurman upon a more favorable footing. If Allen after paying all but the last payment for the lots ‘ *130 bad chosen to surrender them in preferenceio making the last payment, and Owsley had agreed to accept them in lieu thereof, and thereupon had surrendered the note for the last payment, and taken the promise of Allen, either verbal or written, to surrender the obligation for the title, and if, after such an arrangement had been made, Allen in violation of his promise should institute a suit for a breach of the covenant in failing to convey, and were to -succeed by presenting the notes for the purchase money as evidence of their payment, ought not the chancellor to interpose? We think he should, and that it would be a plain case of equitable cognizance. Allen’s proceedings in the case supposed would be fraudulent, but his bond never having been cancelled, would still retain its legal efficacy; and therefore, the chancellor would prevent the consummation of the'fraud, although it might not be competent for the common law judge to resist hisclaim to a judgjnent.
Now, although Allen has made no express agreement to surrender the lots in preference to paying the last note for the purchase money, thereby sustaining an entire loss of alltbathe had previously paid; yet he has stipulated with his sureties and mortgagees, that the/ might dispose of the lots in a manner agreed on, in order to save themselves, and the lots have been accordingly disposed of, and under that disposition have fallen into the hands of Owrsley. ‘ This is precisely in principle the same, with a direct sale of the lots to Owsley, for the balance of the purchase money due him. The legality of the sale by the sheriff under Allen’s agreement contained in the mortgage, and under the directions of the mortgagees, is not, and cannot be brought in question; for Thurman insists that the sale shall stand, and Allen has already made one fruitless attempt to set it aside. Whatever error there may have been in selling Allen’s equitable interest in the lots by execution, must be regarded as cured in the present controversy by the consent of Thurman, that the sale shall not be molested. The case when simplified then, is this; Owsley contracted the lots to Allen, he vested his equitable interest in his sureties, and they passed it to Owsley and got credit for what it was worth, or what it sold for at public vendue, having acted in the business in conformity to the powers vested in them-.
*131 The statement of the case is sufficient to show that it would be tolerating a fraud to permit Allen or his assignee to pocket damages for Owsley’s failure to convey the lots, when Alien liad indirectly sold them ¡to Owsley, and by the sale exonerated himself from the payment of the money which he had originally agreed to give for the lots. Suppose Allen had paid no part of the purchase money, and Owsley had obtained judgments for the whole of if, and levied his executions on the lots, had them sold, purchased himself, and tncreby extinguished his demands; could Thurman therer upon recover $¡2,900 if Owsley refused to convey thp lots to him? If.'he could, Owsley would precisely loose that sum without the shadow of gain. A doctrine which would permit such an absurdity cannot be correct, If the sale and purcha e is valid, it must. operate in equity as a defeasance of the obligation to convey, and if they are invalid in equity, they may be vacated, altogether. ■ Upon investigation in all cases like the present, it will clearly appear, that the purchase money has not been paid in reality, although it may. seem to be the fact by the returns on the executions. When the truth is elicited in chancery,it would be iniquitous to suffer the collection of damages for a failure to convey, recovered at law under a delusive aspect of things. Another analogous case will-illustrate the equity of this. Suppose Allen had paid Owsley the «hole purchase money for the lots, and. then had contracted them-to another, giving his own bond for a title, instead of assigning Owsley’s. Suppose this vendee of Allen, after paying to him all the purchase money, should then, for full value, assign Allen’s title bond to Owsley. If Allen should sue in chancery for a specific execution, might not Owsley defeat him by settingup his own bond for a title? damages should be recovered by Allen at law, should not a perpetual injunction restrain their collection? It seems to us, that affirmative answers alone could comport with equity.
We presume that the whole difficulty on the part of the circuit court in settling this controversy, according to the foregoing principles, arose from the seeming injustice of permitting Owsley to hold the lots, and likewise ‡ 1,300 in commonwealth’s bank notes he had collected^ This injustice, if it be one, cannot be rem *132 edied. It results from the fluctuations in the prices or value of property, proceeding from causes, in numberless instances, beyond human control or foresight, and not to be provided against by judicial tribunals.
If the improvements on the lots bad been destroyed by fire after Allen’s purchase, it might have reduced their value to less than the last payment; and in such a case, when sold under execution, if the}' brought less than the balance due, the deficiency would still have to be made up out of m Hen's property. The remedy in such, and in all cases where the property deteriorates in value from any cause, is to the sympathy of the creditor and not to the law which acts upon general and comprehensive principles. If the property increases in value it is the vendee’s gain. If it sinks he must abide the loss.
From the foregoing view'of the case, it follows, that-the circuit court ought to have perpetuated the injunction for the whole amount of the judgment at law. But it is contended by Thurman that he purchased the lots and took an assignment of the bond on Owsley, finder a stipulation or agreement on the part of Owsley; to receive commonwealth’s bank notes for the last payment. Indeed he contends that Owsley agreed to jeceive the whole of the purchase money in commonwealth’s hank notes. Owsley denies it, and. insists that the notes for the purchase money were, written without fraud or mistake for so many dollars.
The strongest testimony in support of Thurman’s allegations, relative to Owsley’s agreement to receive paper amounts to this, that Owsley agreed in the presence of Thurman before lie obtained an assignment of the title bond to receive bank paper. Who this agreement was with, and upon what consideration, or when it was made, we are left to infer. It does not appear that Owsley knew that Thurman had any intention of procuring an assignment of his title bond, or that lie induced him in the smallest degree to trade for it; or that Thurman was to pay the balance of the purchase money then due.
Under these ci rcumstances the testimony of a sol ilary witness, if 1 'hut man’s allegations were directly supported, would be deemed insufficient to establish *133 any obligation on Owsley, to accept commonwealth’s paper, in discharge of Ms debt. We cannot perceive that Owsley has lost any of his equity by agreeing to accept commonwealth’s paper; and thereafter prosecuting his demand for specie as alleged. The proof is insuilicient.
Jlndcrsan, for plaintiff; Kincaid, for defendants.
If Thurman was permitted to collect the whole amount of his judgment, he would receive the amount which Swope bid for the lots, without a particle of consideration passing from his assignor to Owsley therefor. The lots were not to be Allen’s until be paid for them. They were sold as though they had been paid for by his consent, and the execution credited with the price for which they sold as so much paid. It would be a money making speculation to permit Allen to have property sold not his, because not paid for, to pay his debts, and afterwards to permit his assignee to ' recover the value of the property thus sold upon the ground, that it was Allens!
In considering the case upon the whole grounds taken on either side, we are of opinion that the injunction should have been perpetuated for the whole amount of the judgment at law.
Wherefore, the decree of the circuit court is reversed and the cause remanded, with directions to enter a decree in conformity to this opinion.
The plaintiff in error must recover costs.